Harold SHLENS and Becky Shlens, as Trustees under a Trust Agreement dated July 19, 1983; Michael Shlens, as Trustee for the Benefit of Jennifer Shlens; Michael Shlens, as Trustee for the Benefit of Jonathan D. Shlens; and Michael Shlens, as Trustee for the Benefit of Harold Shlens, Plaintiffs-Appellants,

v.

Nicholas EGNATZ, Jack Fesko, Albert C. Hand, Harold D. Johnson, Thomas G. Katshanias, Jarvis A. Roper and John R. Wilhelm, III, individually and as directors of the Hoosier State Bank of Indiana, Defendants-Appellees.

No. 37A03–8608–CV–247.

Court of Appeals of Indiana,
Third District.

May 28, 1987.

Rehearing Denied July 9, 1987.

Harold Abrahamson, Mark P. Dvorscak, Abrahamson, Reed & Adley, Hammond, for plaintiffs-appellants.

R.R. McMahan, Stephen M. Murray, Diane I. Jennings, Lord, Bissell & Brook, Chicago, Ill., Frederick M. Cuppy, David Cerven, Thomas, Burke, Dyerly & Cuppy, Merrillville, for defendants-appellees.

HOFFMAN, Judge.

The Shlenses, appellants in this action, are minority shareholders in the Hoosier State Bank (Hoosier); the appellees are the Bank's directors. The Shlenses are appealing the dismissal of their complaint which named the directors individually and in their corporate capacities.

The facts which together culminated in the present appeal began in 1982 and 1983 when Hoosier began experiencing financial difficulties. During this period the Bank was ordered, by the Federal Deposit Insurance Corporation (FDIC) and the Indiana Department of Financial Institutions (DFI) to raise $3.5 million in new capital. For reasons that are in dispute the Bank was unable to obtain the additional capital.

Next, on September 22, 1983, the Bank applied to the DFI for assistance pursuant to IND.CODE § 28–1–7.2–1 *et seq.* (1986 Supp.). This statute entitled, "Merger of Troubled Institutions," grants the DFI the authority to determine that a bank is "troubled," then to solicit and evaluate merger offers from "qualified financial institutions,".and ultimately to order a merger between the troubled financial institution and the qualified financial institution. The DFI went through this statutory procedure and, on January 5, 1984, ordered Hoosier to merge with the Gainer Corporation, parent company of the Gainer Bank. As part of the order, Hoosier's shareholders were directed to tender their shares to Gainer, in exchange for $12.30 per share, a price that the DFI found to be fair and reasonable.

The Shlenses filed this action on July 30, 1984. Their complaint alleged that the merger with Gainer Corporation was the culmination of a scheme in which Hoosier's directors breached their fiduciary duties by conspiring to perpetuate themselves in office. The Shlenses also alleged that as part of this scheme the directors neglected opportunities to obtain the needed $3.5 million capital infusion and that the directors made various misrepresentations in communicating the terms of the merger.

The directors moved to dismiss the Shlenses complaint on the grounds that the court was without jurisdiction to hear the case. The directors argued that the Shlenses' failure to exhaust administrative remedies was a jurisdictional defect. After briefing and oral arguments the trial court agreed with the directors, dismissed the complaint and this appeal ensued.

The Shlenses raise three issues for review. These are:

(1) whether this action challenges an administrative decision, and thus invokes the exhaustion of remedies requirement;

(2) whether the Shlenses are "aggrieved persons" within the meaning of the Administrative Adjudication Act; and

(3) Would it be futile to require the Shlenses to pursue their administrative remedies?

The Administrative Adjudication Act, IND.CODE § 4-22-1-2 *et seq.* (1986 Supp.) in part, functions to allocate adjudicatory jurisdiction between administrative agencies and the courts. One method by which administrative jurisdiction is maintained is by the requirement that a person aggrieved by an administrative decision must first exhaust his administrative remedies before seeking judicial review of the agency decision. *See e.g., United States Auto Club, Inc. v. Woodward* (1984), Ind.App. 460 N.E.2d 1255.

■ The exhaustion of remedies doctrine acts as a restraint on judicial involvement in administrative decisions. Application of the doctrine requires the fundamental assumption that the administrative agency has jurisdiction over the particular complaint at issue. In the present case, the Shlenses are challenging this fundamental assumption. The Shlenses argue that they were not required to exhaust administrative remedies, because the DFI had no jurisdiction to hear their complaint, which they characterize as a purely common-law cause of action.

■ Initially, the law is clear that subject-matter jurisdiction is not controlled by the manner of pleading, but rather by the nature of the claim presented. *State ex rel. Young v. Noble C.C. et al.* (1975), 263 Ind. 353, 332 N.E.2d 99. The question of the extent of administrative jurisdiction, when the claim includes issues that are beyond administrative competence, is governed by the doctrine of primary jurisdiction. This rule essentially holds that when any part of the claim is within the agency's exclusive jurisdiction, then the whole claim must first be heard by the agency. *Metropolitan Dev. Com'n v. Waffle House* (1981), Ind.App., 424 N.E.2d 184. Thus, in the present case, it is necessary to look at the Shlenses' complaint to determine whether consideration of its claims would involve judicial review or redetermination of any part of the DFI's decision to order the merger between the Hoosier State Bank and the Gainer Corporation.

As previously stated, the Shlenses seek monetary damages based on allegations that the directors breached their fiduciary duties by engaging in a scheme to perpetuate themselves in office. The directors allegedly accomplished this by rejecting an opportunity to obtain the necessary capital and by misinforming the shareholders of the terms of the merger with Gainer. Additionally, at oral arguments, counsel for the Shlenses, represented to this Court that they did not take issue with the $12.30 price, rather the focus was on the directors' actions that caused the decline in per share value. Finally, the complaint seeks monetary damages measured by the alleged actual book value of the shares on the day the merger was ordered, plus a fifty per cent premium for the sale of control, plus punitive damages.

■ The initial conclusion that must be drawn is that the claims asserted by the Shlenses are primarily derivative in nature. That is, the Shlenses are pressing claims that properly belong to the Hoosier State Bank. This is especially clear with the allegations regarding the rejection of the opportunity for the capital infusion, and with the allegations of corporate waste that reduced the per share value to $12.30. In both of these instances redress is sought for harm done directly to the corporation. Both of these claims are also archetypical derivative actions. *See e.g., Scott v. Anderson Newspapers, Inc.* (1985), Ind. App., 477 N.E.2d 553; *Marcovich v. O'Brien, Auditor* (1916), 63 Ind.App. 101, 114 N.E. 100. The Shlenses failed to properly plead this case as a derivative action; however, it is unnecessary to address the procedural infirmities thus created, because the consequences of the derivative nature are more immediate.

The conclusion that this case is primarily a derivative action is synonymous with saying that the Shlenses are asserting rights that belong to Hoosier. From this it fol-

lows, assuming that the complaint otherwise states a good cause of action, that any recovery obtained here would belong to the Bank. Therefore, this lawsuit is actually an uncounted asset of the Bank.

■ The conclusion that the Shlenses are attempting to recover an asset of the Hoosier State Bank inexorably leads to the conclusion that this case is within the jurisdiction of the DFI. The DFI, under the Merger of Troubled Institutions Act, IND. CODE § 28–1–7.2–3 (1986 Supp.) has the responsibility of determining when an institution is troubled and when a merger offer is fair and reasonable. Each of these functions obviously requires the department to analyze the financial situation and actual value of the institution in question. In this case, a finding by the trial court that the Hoosier State Bank was damaged by its directors' actions, would be tantamount to a finding that the DFI erred when it found that the $12.30 per share merger offer was fair and reasonable, because the DFI could not have considered all of Hoosier's assets.

The difficulties thus created would be exacerbated if the trial court were to award damages along the lines urged by the Shlenses. The trial court was asked to find that the Bank had been damaged in an amount equal to the difference between $12.30 and the alleged actual book value, plus a hitherto uncollected premium for sale of control. If the trial court were to find this appropriate, then again, this finding would be logically indistinguishable from a finding that the DFI had accepted too low of an offer and thus the Gainer offer was not fair and reasonable.

Ultimately the trial court is, of course, empowered to grant relief as the Shlenses request, but the trial court is without jurisdiction until all administrative remedies have been exhausted. Judicial consideration of the Shlenses complaint would, at least in part, involve consideration of matters within the statutorily defined jurisdiction of the DFI. Therefore the DFI has primary jurisdiction over the whole of the Shlenses case, and they were required to exhaust their administrative remedies, before seeking judicial review.

By their next issue, the Shlenses argue that they should not be required to exhaust their administrative remedies, because they are not "persons aggrieved" within the meaning of the Administrative Adjudication Act (AAA). This issue stems from IND.CODE § 4–22–1–14(a) (1986 Supp.) which in pertinent part, reads:

"Any party or person aggrieved by an order or determination made by any such agency shall be entitled to a judicial review thereof in accordance with the provisions of this chapter."

The Shlenses cite, *Stout v. Mercer et al.* (1974), 160 Ind.App. 454, 312 N.E.2d 515, as authority for the proposition that, "the word 'aggrieved' is and has been used in our statutes for many years to describe persons or parties authorized by the statute to seek judicial review of decisions by boards and agencies of government...." *Id.* at 459, 312 N.E.2d at 518.

From this the Shlenses argue that since the Merger of Troubled Financial Institutions Act precludes them from exercising dissenting shareholder rights, *see* IND. CODE § 28–1–7.2–6(b) (1986 Supp.), then they are not the aggrieved persons described in the statute. The Shlenses argument is incorrect and apparently stems from a misunderstanding of the dissenting shareholder rights that the statute rejects.

■ "Dissenting shareholders' rights" is a term of art that describes the right of dissenting minority shareholders in a merger to seek judicial appraisal of their shares, instead of being forced to accept the merger offer price that the majority of shareholders has accepted. The exact rights and procedure governing this process in an ordinary bank merger and the rights specifically denied by the Merger of Troubled Financial Institutions Act, are set out in IND.CODE § 28–1–7–21 (1986 Supp.). This section provides time limits and procedures whereby the dissenting shareholders first negotiate with the corporation, and failing that, then turn to the court for a determination of value.

■ From this, it is clear that the lack of dissenting shareholders' rights has no bear-

ing on whether the Shlenses are entitled to seek administrative or judicial review of the DFI's decision in question here. Nothing in the Merger of Troubled Financial Institutions Act precluded the Shlenses from challenging the DFI's order through the channels provided by the AAA. Moreover it is also clear that the Shlenses are in fact aggrieved persons entitled to ultimately request judicial review, after exhaustion of administrative remedies.

In *Stout, supra,* the Court further defined "aggrieved" as follows:

"The word 'aggrieved' in the statute refers to a substantial grievance, a denial of some personal or property right, or the imposition upon a party of a burden or obligation.... To be 'aggrieved' is to have a legal right, the infringement of which by the decree complained of will cause pecuniary injury.... The appellant must have a legal interest which will be enlarged or diminished by the result of the appeal." (Citations omitted.)

312 N.E.2d at 518.

While the statute referred to is different from the AAA, the above definition is still pertinent, and the Shlenses' situation falls squarely within its terms. The Shlenses, by their complaint, are asserting a "substantial grievance" which imposed on them, as shareholders, the obligation to tender their shares for less than full value. The complaint alleges that the DFI's decree caused the corporation and the shareholders pecuniary injury and presentation, in an administrative review, of the evidence supporting the Shlenses' complaint could, potentially, have altered the DFI's decision, thus affecting their legal interest.

■ The Shlenses final argument is that they should not be required to exhaust their administrative remedies, because such efforts would be futile. Futility of seeking an administrative remedy is a recognized exception to the exhaustion requirement. *Ahles v. Orr* (1983), Ind.App., 456 N.E.2d 425. To establish a claim of futility, there must be a proof that the agency was powerless to effect a remedy, or that the remedy was impossible or fruitless and of no value under the circumstances. *United*

*States Auto Club, Inc. v. Woodward* (1984), Ind.App., 460 N.E.2d 1255.

■ In the present case, the Shlenses have failed to demonstrate the futility of pursuing their administrative remedies. The Shlenses are seeking to recover what they allege to be the true value of their shares, an amount they allege they were denied, because of corporate waste and fraud committed by the directors. If the Shlenses had presented their evidence to the DFI, it is entirely possible that the agency would have altered its determinations that Hoosier was a troubled institution and that the $12.30 per share was a fair and reasonable price. This obviously would have avoided the pecuniary harm the Shlenses seek to redress and thus the remedy would not have been futile. Therefore, since the Shlenses were required and failed to exhaust their administrative remedies, the judgment of the trial court dismissing the Shlenses' complaint is affirmed.

Affirmed.

STATON and BUCHANAN, JJ., concur.