INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC. and Robert B. Gardner, in his capacity as Commissioner of the Indiana High School Athletic Association, Inc., Appellants (Defendants below),

v.

Freddy REYES, Lafayette Jefferson High School and Dennis C. Blind, in his capacity as Principal of Lafayette Jefferson High School, Appellees (Plaintiffs below).

No. 79S02–9605–CV–361.

Supreme Court of Indiana.

Dec. 19, 1997.

Robert M. Baker, III, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, for Appellants.

E. Kent Moore, Laszynski & Moore, Lafayette, for Appellees.

**ON PETITION TO TRANSFER**

SULLIVAN, Justice.

This opinion is issued together with *Indiana High School Athletic Ass'n v. Carlberg*, 694 N.E.2d 222 (Ind.1997). *Carlberg* addresses at length the approach Indiana courts take to resolving disputes involving the rules and enforcement actions of the Indiana High School Athletic Association ("IHSAA"). Here we write primarily to resolve a conflict within the Court of Appeals concerning the enforceability of the IHSAA's Restitution Rule.

*Background*

We will briefly explain the background of this case; for a more complete discussion of the facts, see the Court of Appeals opinion in *Indiana High School Athletic Ass'n v. Reyes*, 659 N.E.2d 158 (Ind.Ct.App.1995).

Poor academic performance during the 1990–91 school year forced Freddy Reyes to repeat the ninth grade in 1991–92 in a Puerto Rican school. During the spring and summer of both 1991 and 1992, Reyes participated on an all star baseball team. In the summer of 1992, Reyes traveled with this baseball team to Lafayette, Indiana, to participate in the Colt League World Series. In 1992, Freddy Reyes moved in with a host family in Lafayette and enrolled as a sophomore at Lafayette Jefferson High School. Reyes was a member of the baseball team during the springs of 1993 and 1994, his sophomore and junior years, and earned all state honors.

At the beginning of the 1994–95 school year, the IHSAA[1] learned that Reyes had first enrolled in ninth grade in the fall of 1990. The IHSAA notified Lafayette Jefferson that Reyes was not eligible to participate in interscholastic athletics as a senior during the 1994–95 school year due to the IHSAA's Eight Semester Rule, Rule 12–3 of the

---

1. Organized under the laws of this state, the IHSAA is a voluntary, not-for-profit corporation comprised of members including public, private, parochial and institutional schools in this state.

IHSAA General Eligibility Rules. The version of the Eight Semester Rule applicable to Reyes's case provided that after enrollment in the ninth grade, student athletes have a maximum of four spring semesters and four fall semesters of athletic eligibility. Reyes appealed to the IHSAA to grant him an extra year of eligibility under the IHSAA "hardship rule." [2] The IHSAA Executive Committee denied Reyes's request. *See Reyes*, 659 N.E.2d at 161–62 (detailing the IHSAA Executive Committee's findings of fact and conclusions of law).

Reyes filed a verified complaint for injunctive relief on the grounds that the IHSAA Executive Committee's decision was arbitrary and capricious and in violation of his right to equal privileges and immunities under Article 1, Section 23, of the Indiana Constitution. The Tippecanoe Superior Court issued a temporary restraining order preventing the IHSAA and Lafayette Jefferson from enforcing the Eight Semester Rule in Reyes's case. The Tippecanoe Superior Court subsequently reversed the findings of the IHSAA Executive Committee, found in favor of Reyes, and issued a permanent injunction against the IHSAA and Lafayette Jefferson. Pertinent to this appeal, the trial court also prohibited the IHSAA from sanctioning Lafayette Jefferson for the school's compliance with the court order.

The IHSAA initiated an appeal and filed a Petition to Stay Judgment Pending Appeal with the trial court. The trial court denied the Petition to Stay. The Court of Appeals reversed and held that (i) the IHSAA's determination to deny Reyes's application for an exception under the hardship rule was not arbitrary and capricious; (ii) the IHSAA's decision to deny Reyes's request for another year of eligibility was state action subject to review under Article 1, Section 23, of the Indiana Constitution; (iii) the Eight Semester Rule and the hardship rule did not violate the right to equal privileges and immunities under Article 1, Section 23, of the Indiana Constitution; and (iv) the IHSAA Restitution Rule is valid.

 . In the Petition to Transfer, Lafayette Jefferson High School and Dennis C. Blind, in his capacity as principal (together referred to in this opinion as "Lafayette Jeff"), do not challenge the decision of the Court of Appeals as to Parts I, II, or III. We therefore now summarily affirm, expressly adopt, and incorporate by reference Parts I, II, and III of the opinion of the Court of Appeals. Ind.Appellate Rule 11(B)(3). However, Lafayette Jeff in its Petition to Transfer asks this Court to resolve the apparent conflict between two Court of Appeals decisions addressing the validity of the IHSAA's Restitution Rule. *Cf. Reyes*, 659 N.E.2d 158 (upholding the Restitution Rule) *with Ind. High Sch. Athletic Ass'n v. Avant*, 650 N.E.2d 1164 (Ind.Ct.App.1995) (holding the Restitution Rule invalid), *trans. denied.* In addition, Lafayette Jeff asks this Court to vacate the Court of Appeals opinion and reinstate the trial court's prohibition against the IHSAA enforcing its Restitution Rule against Lafayette Jeff.

*Discussion*

Lafayette Jeff contends that the Court of Appeals erred in determining that the Restitution Rule of the IHSAA General Eligibility Rules is valid and enforceable as to it. Failing to articulate specific legal grounds for determining the Restitution Rule to be unen-

---

The member schools associated through the IHSAA adopt rules regarding eligibility and similar matters related to interscholastic athletic competition. Included among these eligibility rules is the Restitution Rule.

**2.** The IHSAA hardship rule reads as follows: The Commissioner or his designee or the Committee shall have the authority to set aside the effect of any Rule when, in the opinion of the Commissioner or his designee or the Committee:

a. Strict enforcement of the Rule in the particular case will not serve to accomplish the purpose of the Rule;
b. The spirit of the Rule has not been violated; and
c. There exists in the particular case circumstances showing an undue hardship which would result from enforcement of the Rule. Rule 17–8.1.

forceable, Lafayette Jeff merely asks this Court to adopt the position of the Court of Appeals in *Avant,* 650 N.E.2d 1164, or in the alternative, state that the Restitution Rule cannot be used to require forfeiture when the school itself does not challenge the IHSAA rule. We reject these arguments and affirm the holding of the Court of Appeals as to the validity of the IHSAA Restitution Rule. We write in order to (i) disapprove *Avant* to the extent that it holds the Restitution Rule to be invalid; (ii) review the Restitution Rule under the appropriate standard; (iii) address Lafayette Jeff's argument that the Restitution Rule should not apply to the school in this particular case where the school was a defendant in the original action challenging enforcement of the eligibility rule; and (iv) address the general policy concerns raised by this case.

## I

The Restitution Rule of the IHSAA General Eligibility Rules provides that the IHSAA may sanction member schools by requiring them to forfeit victories, return trophies and awards, and return certain funding in the event an ineligible student athlete participates in violation of the IHSAA Eligibility Rules, but in accordance with an injunction or restraining order which is later vacated, stayed, reversed or finally determined to have been unjustified.[3] A school and student are subject to the Restitution Rule when a student athlete participates in interscholastic competition where that student athlete is declared ineligible by the IHSAA but participates in accordance with a court's restraining order or injunction that is later vacated or overturned. In the present case, Reyes's participation as a member of the Lafayette Jeff baseball team for the 1994–95 baseball season made Lafayette Jeff subject to the provisions of the Restitution Rule.

Nothing in the trial judge's conclusions of law speaks to the validity of the IHSAA Restitution Rule. Only in the *Judgment* does the trial judge allude to the Restitution Rule: "Having enjoined both the IHSAA and Lafayette Jefferson High School, it is apparent to the Court that no IHSAA sanctions should apply against Lafayette Jefferson High School for complying with this Court's Order." (R. at 27.) Assuming that this judgment in fact was intended to enjoin the IHSAA from enforcing its Restitution Rule, the trial judge gave no legal basis for such action.[4]

In the Court of Appeals, Lafayette Jeff argued that it would be manifestly unreasonable to allow the IHSAA to enforce its Restitution Rule. Without stating a particular standard under which the Restitution Rule is unenforceable, Lafayette Jeff contended that the issue of the validity of the IHSAA Restitution Rule previously had been disposed of in *Avant.* We therefore assume that Lafay-

---

**3.** The Restitution Rule, in part, reads as follows:

Rule 17–6
Participation by virtue of court action
 If a student is ineligible according to Association Rules but is permitted to participate in interschool competition contrary to Association Rules but in accordance with the terms of a court restraining order or injunction against the student's school and/or the Association and injunction is subsequently voluntarily vacated, stayed, reversed or it is finally determined by the courts that injunctive relief is not or was not justified, any one or more of the following action(s) against such school in the interest of restitution and fairness to competing schools shall be taken:
 a. Require individual or team records and performances achieved during participation by such ineligible student be vacated or stricken;
 b. Require team victories be forfeited to opponents;
 c. Require team or individual awards earned be returned to the Association; and/or
 d. If the school has received or would receive any funds from an Association tournament series in which the ineligible individual has participated, require the school forfeit its share of net receipts from such competition, and if said receipts have not been distributed, authorize the withholding of such receipts by the Association.

**4.** The trial judge could not have relied upon *Avant* as the judgment preceded the handing down of the *Avant* opinion.

ette Jeff adopts the reasoning of *Avant* as a basis for its argument. In *Avant*, the appellee argued that the Restitution Rule is against the public policy of this state by punishing schools and students for complying with the court order. *Avant*, 650 N.E.2d at 1171. The *Avant* court found this argument persuasive and wrote, "It would be illogical and manifestly unreasonable to exact penalties upon individuals and schools as punishment or retribution for their actions in compliance with a court order." *Id.* The *Avant* court analogized the situation of the application of the Restitution Rule to that situation in which a court finds a statute to be unconstitutional:

> 'The theory that a law held unconstitutional is no law at all and void *ab initio* for all purposes, including retroactive invalidity, runs counter to the hard facts of life. The actual existence of a statute prior to a determination of invalidity is an operative fact. Because of such *de facto* existence and reliance upon its validity, it has practical consequences which cannot be justly ignored. The past cannot always be erased by a simple judicial decree.' [*United REMC v. Indiana Michigan Power Company*, 648 N.E.2d 1194 (Ind.Ct.App. 1995) ] citing *Martin v. Ben Davis Conservancy District* (1958), 238 Ind. 502, 510, 153 N.E.2d 125.[5]

*Avant*, 650 N.E.2d at 1171.. The Court of Appeals in *Avant* concluded that "[t]he same rationale applies and renders the IHSAA's restitution rule manifestly unreasonable." *Id.* Thus the *Avant* court points to *REMC* and *Martin* as support for the proposition that an order issued under color of law bars enforcement of the IHSAA's Restitution Rule as against the high school.

 We disagree with this conclusion and doubt the applicability of the cited *Martin* rationale to the Restitution Rule. In order to explain, we review this Court's opinion in *Martin*. In relevant part, this Court was forced to determine whether a statute declared unconstitutional is void for *all* pur-

poses or whether an exception existed to save a final judgment based upon the statute and rendered prior to its being declared unconstitutional. *Martin*, 238 Ind. at 509, 153 N.E.2d at 128. This Court wrote, "The general rule is said to be that a statute declared unconstitutional is void *ab initio*. However, this is subject to the exception that the finality of a judgment cannot be affected thereby." *Id.*, 238 Ind. at 510, 153 N.E.2d at 129. In short, *Martin* states that although generally action based upon an unconstitutional statute cannot stand, a final judgment handed down pursuant to that statute prior to the declaration of unconstitutionality does stand.

The paragraph in *Martin* upon which the *Avant* court relies merely explains the rationale behind the "final judgment" exception to the "void *ab initio*" general rule. *Martin* does not provide a proper analogy with which to assess the validity and enforceability of the Restitution Rule where the trial court's injunction is not a final judgment. The *Avant* court effectively equated the trial court's *appealable* injunction with *Martin's* unappealable final judgment. But it is precisely the interest in finality that justifies the *Martin* "final judgment" exception to the "void *ab initio*" general rule. Where the judgment at issue is not final—as a trial court's injunction will be in Restitution Rule litigation—the *Martin* exception is not analogous.

## II

Much of the argument in this case turns on the parties' respective views of the standard by which Indiana courts should review decisions of the IHSAA. The IHSAA argues that we should review the Restitution Rule as we would any challenge to the internal affairs of voluntary membership associations. While not disputing that the IHSAA is a voluntary membership association, Lafayette Jeff contends that Indiana courts have historically given heightened scrutiny to IHSAA decisions. Our response to these arguments

5. The IHSAA claims that *United REMC v. Indiana Michigan Power Co.*, 648 N.E.2d 1194 (Ind.Ct.App.1995), *trans. denied*, is of questionable authority to the extent that the reason for the

*Martin* rule does not translate into the facts presented in *REMC*. We need not decide this question in order to resolve the issue before us today.

starts with the same principles set forth in our *Carlberg* opinion today and then elaborates.

### A

The rule in Indiana is that courts exercise limited interference with the internal affairs and rules of a voluntary membership association:

A voluntary association may, without direction or interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and its right to interpret and administer the same is as sacred as the right to make them.

*State ex rel. Givens v. Super. Ct. of Marion County,* 233 Ind. 235, 238, 117 N.E.2d 553, 555 (1954) (citations omitted). Therefore, "[a]s a general rule courts will not interfere to control the administration of the constitution and by-laws of such association, or to enforce rights springing therefrom." *Id.* (citations omitted). In this regard, the "articles of incorporation and bylaws of a not-for-profit corporation are generally considered to be a contract between the corporation and its members and among the members themselves." *Lozanoski v. Sarafin,* 485 N.E.2d 669, 671 (Ind.Ct.App.1985) (citing *Orchard Ridge Country Club, Inc. v. Schrey,* 470 N.E.2d 780 (Ind.Ct.App.1984)).

There are some exceptions to this general rule. One, recognized in *State ex rel. Givens,* is where the decision of the voluntary membership association infringes upon a personal liberty or property right. At issue in *State ex rel. Givens* was the jurisdiction of a trial court to compel the holding of an election of officers of a union. This Court held that courts of equity could not interfere with the internal affairs of voluntary membership associations and that the trial court was "without jurisdiction to grant the relief sought." *State ex rel. Givens,* 233 Ind. at 238, 117 N.E.2d at 556. But we did acknowledge that the trial court would have had jurisdiction to consider the plaintiff's complaint had it been based upon and sought the protection of some civil or property right having its origin elsewhere. *Id.* Accord,

*Brenner v. Powers,* 584 N.E.2d 569 (Ind.Ct. App.1992), *trans. denied; Lozanoski,* 485 N.E.2d at 671; *Orchard Ridge Country Club,* 470 N.E.2d at 782; *Plummer v. American Inst. of Certified Pub. Accts.,* 97 F.3d 220, 228 (7th Cir.1996).

A second exception has been recognized in certain opinions of the Court of Appeals for situations where the decision of the voluntary membership association constitutes fraud or other illegality. *See, e.g., Randolph v. Leeman,* 129 Ind.App. 134, 145–46, 146 N.E.2d 267, 272 (1957).

There has been language in certain opinions of the Court of Appeals that has suggested additional exceptions to the noninterference rule. *United States Auto Club v. Woodward,* 460 N.E.2d 1255 (Ind.Ct.App. 1984), suggests an exception for voluntary membership association rules applied in an arbitrary, discriminatory, or malicious manner. *Id.* at 1261. *Cf. Plummer,* 97 F.3d at 227 (criticizing *Woodward* ). *Terrell v. Palomino Horse Breeders of America,* 414 N.E.2d 332, 335 (Ind.Ct.App.1980), suggests an exception for association rules requiring due process. *Cf. Crane v. Ind. High Sch. Athletic Ass'n,* 975 F.2d 1315, 1329 (7th Cir. 1992) (Posner, J., dissenting) (calling *Terrell's* holding "dubious in light of *[State ex rel.] Givens* ").

We reject additional exceptions to the rule. Absent fraud, other illegality, or abuse of civil or property rights having their origin elsewhere, Indiana courts will not interfere in the internal affairs of voluntary membership association. This means, *inter alia,* that Indiana courts will neither enforce an association's internal rules, *State ex rel. Givens,* 233 Ind. at 239, 117 N.E.2d at 555, nor second guess an association's interpretation or application of its rules, *see Crane,* 975 F.2d at 1329 (Posner, J., dissenting).

### B

Do the principles just enunciated apply to judicial review of IHSAA decisions? While this Court had held nearly forty years ago that the courts would not interfere with the enforcement or administration of the constitution or by-laws of the IHSAA, *State ex rel. Ind. High Sch. Ass'n v. Lawrence Cir. Ct.,*

240 Ind. 114, 162 N.E.2d 250 (1959), we overruled this holding in *Haas v. South Bend Community School Corp.,* "in so far as it holds that the actions of the IHSAA are not judicially reviewable." *Haas v. South Bend Community Sch. Corp.,* 259 Ind. 515, 519, 289 N.E.2d 495, 497 (1972).[6] Since that time, the appellate courts of this state often have applied an "arbitrary and capricious" standard in reviewing the decisions of the IHSAA. *Sturrup v. Mahan,* 261 Ind. 463, 470, 305 N.E.2d 877, 882 (1974). *See Avant,* 650 N.E.2d at 1171 (holding the IHSAA did not act arbitrarily or capriciously in granting student limited eligibility); *Kriss v. Brown,* 180 Ind.App. 594, 609, 390 N.E.2d 193, 202 (1979) (reviewing whether decision of IHSAA was arbitrary and capricious); *Crane,* 975 F.2d at 1325 ("when the IHSAA acts arbitrarily, ... Indiana law tells us we must intervene").

■ Unlike most IHSAA cases, here we are not faced with a student athlete's challenge to an IHSAA decision. Rather, it is Lafayette Jeff that challenges the Restitution Rule. Although we hold in *Carlberg* that we will continue to review for arbitrariness and capriciousness IHSAA decisions affecting students, we see little justification for it when it comes to the IHSAA's member schools. As to its member schools, the IHSAA is a voluntary membership association. Judicial review of its decisions with respect to those schools should be limited to those circumstances under which courts review the decisions of voluntary membership associations— fraud, other illegality, or abuse of civil or property rights having their origin elsewhere.

■ Because Lafayette Jeff's challenge to the Restitution Rule does not allege fraud, other illegality, or abuse of civil or property rights having their origin elsewhere, we will not interfere in this school's dispute with a voluntary association of which it is a member.

### III

We understand Lafayette Jeff to argue that the Restitution Rule shows disrespect for the institution of the judiciary in this state. In its brief submitted to this Court, Lafayette Jeff writes, "The Second District Court of Appeals is now telling all high school administrators that their proper course of action in these types of cases is to defy Trial Court orders...." Br. of Appellee at 7. We do not agree.

■ Contracts frequently allocate risks of unfavorable litigation results. For example, contracting parties agree that should a judgment, order or settlement prohibit a party from enjoying the benefits of the agreement, that party shall have no further obligations with respect to the contract. Doctors and attorneys purchase insurance so as to protect themselves from the consequences of lawsuits. Couples may sign prenuptial agreements dictating what is to occur should a trial judge determine that the prenuptial agreement is unenforceable. Such agreements show no disrespect to the courts.

We presume the judgments of our trial courts are correct and valid—but sometimes they are wrong. If a school wants to enjoy the benefits of membership in the IHSAA, the school agrees to be subject to rule that permits the IHSAA to require the school to forfeit victories, trophies, titles and earnings if a trial court improperly grants an injunction or restraining order prohibiting enforcement of IHSAA eligibility rules. Such an agreement shows no disrespect to the institution of the judiciary.

Member schools voluntarily contract to abide by the rules of the organization in exchange for membership in the association. One of those rules is the Restitution Rule. Undeniably, the Restitution Rule imposes hardship on a school that, in compliance with an order of a court which is later vacated, fields an ineligible player. On the other hand, use of an ineligible player imposes a hardship on other teams that must compete against the teams fielding ineligible players. While schools will contend that it is unfair when they have to forfeit victories earned

---

**6.** It is interesting to note that *Haas* was decided in the same year that Congress passed Title IX of the Higher Education Act, 20 U.S.C. § 1681, the landmark education bill that required equal opportunities for men and women in schools that receive federal money. *Haas* is sort of the Indiana equivalent to Title IX, holding that girls are entitled to participate in interscholastic sports on the same terms as boys.

**258**

with an ineligible player on the field because they complied with a court order, competing schools will reply that it is unfair when they have to compete against a team with an ineligible student athlete because a local trial judge prohibited the school or the IHSAA from following the eligibility rules. The Restitution Rule represents the agreement of IHSAA members on how to balance those two competing interests. The Restitution Rule may not be the best method to deal with such situations. However, it is the method which the member schools have adopted. And in any event, its enforcement by the IHSAA does not impinge upon the judiciary's function.

*Conclusion*

Having previously granted transfer, we (i) adopt and incorporate by reference the opinion and judgment of the Court of Appeals, App.R. 11(B)(3); and (ii) disapprove *Indiana High School Athletic Ass'n v. Avant*, 650 N.E.2d 1164 (Ind.Ct.App.1995), to the extent that it holds that the Restitution Rule is invalid.

SELBY and BOEHM, JJ., concur.

SHEPARD, C.J., concurs with separate opinion.

DICKSON, J., dissents with separate opinion.

SHEPARD, Chief Justice, concurring.

The IHSAA has argued in these appeals that it is not subject to the jurisdiction of the courts. This contention has been rejected by state and federal courts on prior occasions too numerous to mention. I see no reason why parties engaged in litigation with the IHSAA should have to pay their lawyers to respond to this contention. Thus, if we had been asked to do so, I would vote to order payment of attorney fees on this issue.

DICKSON, Justice, dissenting.

I dissent in accordance with the views expressed in my dissenting opinion in *IHSAA v. Carlberg*, also handed down today.