**HISPANIC COLLEGE FUND, INC.,**
**a Delaware Corporation,**
**Appellant–Plaintiff,**

v.

**NATIONAL COLLEGIATE ATHLETIC**
**ASSOCIATION, Appellee–**
**Defendant.**

No. 49A05–0407–CV–359.

Court of Appeals of Indiana.

April 22, 2005.

Thomas F. Bedsole, Julia Blackwell Gelinas, Melanie D. Margolin, Locke Reynolds, LLP, Indianapolis, IN, Attorneys for Appellant.

Donald L. Dawson, John B. Drummy, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Gregory L. Curtner, David R. Grand, Miller Canfield Paddock & Stone, Ann Arbor, MI, Attorneys for Appellee.

## OPINION

MAY, Judge.

The Hispanic College Fund ("HCF") appeals a judgment on the pleadings in its

action against the National Collegiate Athletic Association ("NCAA"). The HCF raises three issues on appeal, which we consolidate and restate as:

1. Whether the trial court properly found the NCAA's decisions regarding its affiliated members were not subject to the court's review absent allegations of fraud or illegality; and

2. Whether the NCAA's decision affecting HCF should have been reviewed for arbitrariness and capriciousness because the NCAA violated a contractual duty to deal with HCF in good faith.

We affirm.[1]

### FACTS AND PROCEDURAL HISTORY

The HCF is a private non-profit organization whose mission is to develop the next generation of Hispanic leaders in the United States by awarding scholarships to deserving Hispanic students. The NCAA is an unincorporated voluntary association of colleges, universities, athletic conferences and other affiliated members. HCF is an affiliated member of the NCAA.

The NCAA promulgates bylaws that govern various aspects of intercollegiate athletic competition, including the maximum number of games a member institution may play per year in a particular sport. Prior to 1999, the NCAA permitted Division I schools to play a maximum of eleven football games. However, a Division I school could participate once every four years in an "exempted" preseason football game, i.e., one that was certified

by the Championships/Competition Cabinet and would not count toward the eleven-game limit.

In January of 1999, the Division I Board of Directors adopted a proposal to eliminate after the 2002 season the certified preseason games and to establish a twelfth regular season game for those institutions that had a fourteen-week season. If a school chose to participate in a certified preseason game in 2002, it could not participate in a twelfth regular season game that year. That is, the preseason game could be played, but it would be counted toward the maximum allowable number of games.

At about the time the proposal was adopted, HCF applied for membership in the NCAA and it was accepted.[2] HCF was authorized to sponsor preseason football games, and the NCAA certified the HCF Football Classic as an "exempt" game in 2000 and 2001.

In 2001 a number of members who had sponsored preseason games, including HCF, sought an exception from the new rule so they could hold "exempt" games during 2002. The NCAA decided only those organizations that had entered into television broadcast contracts prior to the 1999 adoption of the rule could be excepted. Only one organization, the Black Coaches Association, qualified.

Subsequently HCF and other affected members sought waivers of the rule to allow exempted games in 2002. The NCAA approved the waiver requests and

1. We heard oral argument on February 10, 2005, at the University of Southern Indiana in Evansville. We thank the University for its hospitality and commend counsel for the quality of their advocacy.

2. The HCF does not indicate in its complaint, its brief in response to the NCAA's motion for judgment on the pleadings, or its appellate brief whether it became a member of the NCAA before or after the proposal was adopted. The complaint alleges HCF was a member but does not indicate when it joined. The response brief alleges HCF "initiated the application process to become an Affiliated Member" in January of 1999. (App. at 32.)

certified eight preseason games, including HCF's game, for 2002. However, it decided only the Black Coaches Association could sponsor an exempted game in 2003 and 2004 because it had a preexisting television contract.

HCF was denied a waiver for 2003 and 2004 even though ESPN had indicated to HCF it planned to broadcast HCF's preseason game annually. HCF then sued the NCAA alleging the "preexisting television contract" standard was arbitrary and unreasonable and created a "special rule" for the Black Coaches Association. (App. at 14.) The NCAA moved for judgment on the pleadings and its motion was granted. The trial court determined the NCAA is a voluntary membership organization and therefore the court could not interfere with its decisions absent allegations of fraud or other illegality.

## DISCUSSION AND DECISION

■■■ Our review of a judgment on the pleadings is *de novo*. *Adams v. Reinaker*, 808 N.E.2d 192, 195 (Ind.Ct.App.2004). Such a motion "tests the sufficiency of the complaint to state a redressable claim" and should be granted "only when it is clear from the pleadings that the non-moving party cannot in any way succeed under the facts and allegations therein." *Id.* We look solely at the pleadings and accept all well-pleaded facts as true. *Id.* The moving party is deemed to have admitted those facts in favor of the non-moving party and we will draw all reasonable inferences in the non-moving party's favor. *Id.*

1. *Court Authority to Review NCAA Decisions*

■■■ Absent fraud, other illegality, or abuse of civil or property rights having their origin elsewhere, Indiana courts will

not interfere with the internal affairs of voluntary membership associations.[3] *Ind. High Sch. Athletic Ass'n, Inc. v. Reyes*, 694 N.E.2d 249, 256 (Ind.1997). This means our courts will neither enforce an association's internal rules nor second-guess an association's interpretation or application of its rules:

> As to its member schools, the IHSAA is a voluntary membership association. Judicial review of its decisions with respect to those schools should be limited to those circumstances under which courts review the decisions of voluntary membership associations—fraud, other illegality, or abuse of civil or property rights having their origin elsewhere.

*Id.* at 257. The *Reyes* court explicitly rejected additional exceptions. *Id.* at 256.

■■■ Member schools have the internal procedures of their own association available to them to adjudicate disputes and, if necessary, change rules or leadership; "there is no need for courts to micromanage these." *Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg by Carlberg*, 694 N.E.2d 222, 230 (Ind.1997), *reh'g denied*. We review for arbitrariness and capriciousness IHSAA decisions affecting *students*, but there is little justification for such review when the IHSAA *member schools* are involved. *Reyes*, 694 N.E.2d at 257.

In addressing the distinction between decisions regarding members and those regarding students, the *Reyes* court relied on *Carlberg*, which held decisions of the IHSAA with respect to student-athletes constitute "state action" for purposes of federal and state constitutional review under the Equal Protection and the Privileges and Immunities Clauses of the federal and state constitutions. *Id.* at 229.

---

**3.** HCF states in its complaint the NCAA "is an unincorporated, voluntary association of col-

leges, universities, athletic conferences, and affiliated members[.]" (App. at 8.)

Students, unlike member schools, have not voluntarily subjected themselves to the rules of the IHSAA and they have no voice in its rules or leadership. *Id.* at 230. Courts therefore have jurisdiction to review challenges to IHSAA rules and enforcement decisions applicable to a particular student, which review will be done in a manner analogous to judicial review of government agency action, *i.e.,* for arbitrariness or capriciousness.[4] *Id.* at 231.

■ HCF is a member of the NCAA, but it is an "Affiliated Member" (Br. of Appellant at 4) and not a member institution (*i.e.,* a school). It argues the *Carlberg* "student" standard, and not the *Reyes* "member" standard, should apply to the case before us because its membership in the NCAA is not truly "voluntary." That is, the HCF argues it and other affiliated members of the NCAA are "similarly situated to the students in *Carlberg* who, the supreme court recognized, 'ha[ve] no voice in [the association's] rules or leadership.'" (*Id.* at 14) (quoting *Carlberg,* 694 N.E.2d at 230).

HCF notes decisions finding membership in the NCAA is in some ways less than "voluntary." *See, e.g., Bd. of Regents of the Univ. of Okla. v. Nat'l Collegiate Athletic Ass'n,* 546 F.Supp. 1276 (W.D.Okla.1982), *aff'd in part and remanded in part,* 707 F.2d 1147 (10th Cir. 1983), *aff'd sub nom. Nat'l Collegiate Athletic Ass'n v. Bd. of Regents,* 468 U.S. 85, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984). The district court concluded the controls the NCAA exercised over televising college football games amounted to a horizontal agreement among competitors to fix prices and restrict output, a group boycott, and the exercise of monopoly power in violation of the Sherman Act.

In that case, the NCAA insisted membership was voluntary, so the plaintiffs were free to withdraw and rid themselves of NCAA control. The court agreed membership was voluntary in the sense that a member institution could withdraw from the NCAA at any time:

> However, it is clear from the evidence that an institution which withdraws or is expelled from the NCAA could no longer operate a fully-rounded intercollegiate athletic program. Non-member institutions could not compete in the prestigious NCAA championship events in such sports as baseball, basketball, track, swimming, wrestling and gymnastics. They would therefore be unable to recruit quality athletes into their programs. Its football team could not play on television against members of the NCAA. As a practical matter, membership in the NCAA is a prerequisite for institutions wishing to sponsor a major, well-rounded athletic program.
>
> Moreover ... withdrawal or expulsion from NCAA subjects the non-member to a group boycott, and forces the non-member to attempt to compete against a monopolist. The Court must conclude that NCAA membership is not voluntary for these plaintiffs, or for many other colleges and universities for which athletic excellence is an institutional priority.

*Id.* at 1288.[5]

Similarly, HCF argues, membership in the NCAA was a prerequisite if it was to

---

4. Neither party argues on appeal the *Reyes/Carlberg* analysis does not control the case before us, or that the relationship among the IHSAA, the students, and the member schools is not analogous to the relationship among the NCAA, its member schools, and student-athletes.

5. On review, neither the Tenth Circuit nor the Supreme Court appeared to adopt the reasoning of the district court's decision. Both ap-

raise funds and promote its mission by means of a pre-season football contest.[6] Under the since-repealed NCAA bylaws, only an affiliated member could sponsor an exempt preseason game.

Even if membership in the NCAA is involuntary for *schools* under the reasoning articulated in the *Board of Regents* decision, that logic would not apply to HCF because it is not an educational institution. A school that incorporates competitive athletics as part of its educational program might have little choice but to join the NCAA, but HCF "was not under a similar 'compulsion[.]' " (NCAA Br. at 13.) Assuming *arguendo* "As a practical matter, membership in the NCAA is a prerequisite for institutions wishing to sponsor a major, well-rounded athletic program," 546 F.Supp. at 1288, there are numerous other ways HCF might raise funds for its mission. We decline to hold HCF's choice to promote a college football contest renders its NCAA membership involuntary.

HCF also notes a distinction between members who are schools and members who are not. It asserts only the member institutions (apparently meaning schools), and not "voluntary members like HCF"

vote on the NCAA bylaws. (Reply Br. of Appellant at 5 n. 4.) Therefore, unlike the IHSAA member schools addressed in *Carlberg*, HCF asserts it does not "have the internal procedures of their own association available to them to adjudicate disputes and, if necessary, change rules or leadership[.]" 694 N.E.2d at 230.

█. Our review of a judgment on the pleadings is confined to information included in the pleadings. *Bledsoe v. Fleming*, 712 N.E.2d 1067, 1070 (Ind.Ct.App.1999), *reh'g denied*, HCF did not allege in its complaint that the affiliated members lacked voting power.[7] We therefore decline to hold HCF's membership in the NCAA was not "voluntary" based on its asserted lack of voting power.

Even if HCF lacks a voice in NCAA decisionmaking, we would not find HCF to be an "involuntary" member of the NCAA. When HCF sought and accepted membership in the NCAA it presumably did so with knowledge of the conditions of membership. "A person who enters an association must acquaint himself with its laws, for they contribute to the admeasurement of his rights, his duties, and his liabilities." *Edwards v. Ind. State Teachers Ass'n*, 749

pellate decisions were based on standing and antitrust issues and neither appears to address the significance *vel non* of the voluntariness of membership.

**6.** A similar argument that a school's membership in the IHSAA is involuntary was raised by the dissent in *Carlberg* but rejected by the majority. Justice Dickson stated:

To describe the IHSAA as a voluntary association apart from its integral relation to public schools contradicts reality. The IHSAA is the only governing body for high school athletics in the state of Indiana. Every public high school and approximately thirty private schools are members of the IHSAA. In effect, if a school wants to offer any kind of interscholastic athletic program, it has only two choices: the IHSAA and its rules or nothing . . . by declaring the

IHSAA to be a voluntary association, the majority effectively immunizes it from judicial oversight as to its disputes with individual schools.

694 N.E.2d at 244–45 (Dickson, J., dissenting).

**7.** It does refer, in its response to the NCAA's motion, to a provision of the NCAA constitution that specifies affiliated members may not vote. The content of that provision is not set forth in the response nor is the provision mentioned in the complaint. A party's response to a motion is not considered a "pleading." *Rivera ex rel. Rivera v. City of Nappanee*, 704 N.E.2d 131, 133 (Ind.Ct.App. 1998), *trans. denied* 726 N.E.2d 306 (Ind. 1999).

N.E.2d 1220, 1226 (Ind.Ct.App.2001) (*quoting Supreme Lodge, Knights of Pythias of the World v. Knight,* 117 Ind. 489, 20 N.E. 479, 483 (1889)). HCF voluntarily subjected itself to the NCAA's decisionmaking process and does not allege the NCAA's actions were fraudulent, otherwise illegal, or that they abused civil or property rights having their origin elsewhere. We therefore cannot accept HCF's invitation to interfere in the NCAA's internal affairs.

### 2. *HCF's Common-law Contract Claim*

 The "articles of incorporation and bylaws of a not-for-profit corporation are generally considered to be a contract between the corporation and its members and among the members themselves." *Carlberg,* 694 N.E.2d at 230. Relying on this language, HCF asserts its relationship with the NCAA is contractual and therefore a duty of good faith and fair dealing exists, which duty the NCAA violated with its decision. Under a contractual analysis, HCF asserts, "the actions of the NCAA are subject to review under an 'arbitrary and capricious' standard." (Br. of Appellant at 15.)

We note initially that Indiana law does not impose a generalized duty of good faith and fair dealing on every contract. *See First Fed. Savings Bank v. Key Mkts., Inc.,* 559 N.E.2d 600, 603–04 (Ind.1990). Further, while our supreme court has recognized the contractual relationship of a voluntary membership association and its members, *Reyes,* 694 N.E.2d at 256, it has explicitly stated the actions of a voluntary membership association with respect to a member cannot be reviewed under an arbitrariness standard. *Id.* Nor will we "second guess an association's interpretation or application of its rules." *Id.* We must decline HCF's invitation to revisit the *Reyes* holding.

### CONCLUSION

The trial court correctly determined it could neither enforce the NCAA's internal rules nor review the NCAA's interpretation and application of its rules. We accordingly affirm the judgment on the pleadings in favor of NCAA.

Affirmed.

DARDEN, J., and BAILEY, J., concur.