DICKSON, Justice,
dissenting.
The trial court in this case was convinced that the Indiana High School Ath-letie Association ("IHSAA") erroneously attempted to prohibit Jasmine Watson *683 from participating in athletics during her senior year at South Bend Washington High School and that the IHSAA's decision was arbitrary and capricious. As a result Judge David Matsey, serving as a special judge brought in from outside St. Joseph County, enjoined enforcement of the IHSAA decision in a comprehensive, 47-page decision that included 151 detailed findings of fact and 26 conclusions of law. The Court of Appeals agreed and affirmed, emphasizing that there was "no evidence in the record whatsoever that Jasmine violated any IHSAA eligibility rules." Indiana High School Athletic Ass'n, Inc. v. Watson, 913 N.E.2d 741, 757 (Ind.Ct.App.2009). Undaunted, the IHSAA sought transfer to this Court In the meantime, Jasmine completed her senior year at Washington High School and graduated. And after the Court of Appeals decision and the filing of the IHSAA's transfer petition, the Indiana General Assembly enacted legislation requiring that in the future such disputes be submitted to an independent, outside review panel with enhanced powers to reverse, modify, or affirm IHSAA rulings. The new legislation effectively removes from the IHSAA the ultimate interpretation and application of IHSAA rules affecting a student's athletic eligibility. Because Jasmine has graduated and the procedure for review of IHSAA decisions has been altered by statute for all future cases, this appeal is moot and thus should be dismissed.
A majority of this Court prefers not only to take jurisdiction but also to apply this Court's recent decisions that virtually immunize IHSAA decisions from meaningful judicial review. I strongly disagree. The IHSAA's rules and enforcement practices impinge upon parental authority and responsibility to select the schools most appropriate for the interests and talents of their children. And the IHSAA's policies and actions can also, as here, engulf students whose change of schools is motivated or compelled by personal circumstances not principally related to athletic considerations. The IHSAA's robust enforcement of its rules and policies often produces an understandably intense reaction from affected student athletes and parents who are seeking to develop and maximize the student's talents and, if possible, employ such gifts to facilitate college admission and financial aid. When the IHSAA declares a student ineligible for varsity ath-letie competition, the "now or never" consequences upon the student and parents can be catastrophic to the career opportunities of the student athlete who may as a result lose a crucial year-often the senior year-of athletic development and exposure to college athletic recruiters. Parents and students disagreeing with the THSAA actions, such as the plaintiffs here, often turn to Indiana courts for immediate injunctive relief.
But when such relief has been granted by our trial courts, upon appellate review, this Court has for the past decade been extremely deferential to the TIHSAA's decision-making and has refused to invalidate its decisions as arbitrary or capricious. Not surprisingly, legislative intervention has ensued. After our opinions in Indiana High School Athletic Ass'n, Inc. v. Carlberg, 694 N.E.2d 222 (Ind.1997), and Indiana High School Athletic Ass'n, Inc. v. Reyes, 694 N.E.2d 249 (Ind.1997), the Indiana General Assembly in 2000 enacted a special optional procedure permitting aggrieved parents to seek review by a nine-member case review panel[1] independent from IHSAA control and appointed by the State Superintendent of Public Instruction. See *684 Ind.Code § 20-26-14-6 (formerly § 20-5-63-7). Because the case review panel is expressly authorized to "[cJollect testimony and information on the case," Ind. Code § 20-26-14-6(c)(1), the statute empowers the panel to make determinations de movo rather than to review deferentially IHSAA rulings and actions. Jasmine Watson and her mother did not utilize this optional procedure but rather elected to seek and obtain immediate judicial injunctive relief from the IHSAA's decision to enable Jasmine's athletic participation during her senior year. Appellant's Br. at 47.
After the Court of Appeals affirmed the injunctive relief and the IHSAA filed its request for this Court to accept jurisdiction, the legislature reacted swiftly and on March 18, 2010, by a unanimous vote in both houses, modified the statutory optional independent review panel procedure to make it mandatory in future cases. Ind. Code § 20-26-14-6(b); see also 2010 Ind. Acts 1095-99. The 2010 amendment also provides that a parent or the IHSAA may appeal a decision of the case review panel by filing a legal action. In such an action, the statute authorizes the trial court to affirm, modify, or reverse the panel's decision on any one of six grounds [2] based "upon its own review of the facts and issues involved." Ind.Code § 20-26-14 7T(c). It is significant that, upon such judicial review, the trial court is not reviewing the basis of the IHSAA's ruling but rather that of the independent case review panel, thus further confirming the de novo nature of the panel's function. The legislature has interceded and stripped from the IHSAA its previous power to make unilateral student athletic eligibility determinations that had become shielded from meaningful judicial intervention.
As noted above, I believe that this appeal should be dismissed because the student athlete has graduated from high school and because our legislature has intervened and now requires that challenges to IHSAA eligibility rulings be redetermined by an independent case review panel. Because the majority disagrees and has chosen to take jurisdiction and to reverse the trial court, I further dissent, believing that the trial court judge and the Court of Appeals were correct and should be affirmed. Writing for the Court of Appeals, Chief Judge Baker, seeking to "observe the forest, rather than the trees," summarized the salient facts as follows:
Over the course of two years, Valerie-a single mother supporting three children and one grandchild-had a salary that was nearly halved and a work schedule that was drastically curtailed because of our struggling economy. She struggled to pay her bills began using food stamps, and, finally, stopped making regular mortgage payments. She received a notice of foreclosure in the summertime. Though she could have remained in the home for several more months, she chose to move so that her *685 children would not have to be uprooted in the middle of the school year. She searched for a suitable home in Elkhart but was unable to find one that would accept her as a tenant with a low credit rating. She also searched in South Bend and finally found a home that was big enough, in a safe location, within her price range, and close enough to her extended family that they could lend much needed support to the struggling family.
And what does the IHSAA believe she should have done instead? Among other things, the IHSAA seems to have concluded that the better course for Valerie would have been to have: (1) remained in her foreclosed home until she was kicked out, presumably to give herself a longer period of time to find a home in Elkhart, notwithstanding the risk she was running that her children would have had to transfer schools in the middle of the school year; (2) settled for a home in Elkhart that was too small, too expensive, or situated right next to a liquor store; (8) permitted her teenage daughter to live with her basketball coach, in another town; (4) drastically rearranged her life and minimized the needs of her other children, her grandchild, and herself, spending her precious free time driving Jasmine to and from a school located in another town; and/or (5) overlooked the ready, willing, and able family members located in South Bend who were able to provide much needed assistance to the Watsons.
The standard that the IHSAA applied to the Watsons was unreasonable, untenable, and unrealistic. Even if we assumed all of the IHSAA's evidence to be true, we cannot find that the trial court erred by concluding that the evidence in the record does not, in any way, establish that this move occurred for primarily athletic reasons. It is certainly possible that athletics played a role, but to say that athletics played a primary role is to ignore and disregard the evidence in the record that this family was struggling and that Valerie did what she believed to be the best thing for her children. The IHSAA found Valerie's decision to be "unusual." Appellant's App. p. 711. Perhaps it was, but only because she found herself in unusually trying circumstances.
We find that the record amply supports the trial court's conclusions that the IHSAA's conduct rose to the level of willful and unreasonable decision-making that was in disregard of the facts and cireumstances before it and that, consequently, it acted arbitrarily and capriciously.
Watson, 913 N.E.2d at 755-56. I wholeheartedly agree and believe that we should affirm the trial court's preliminary injuncetion restraining the IHSAA's action against Jasmine Watson.
RUCKER, J., concurs.

. The members of the panel are the State Superintendent of Public Instruction, or a designee, as chairperson, plus four parents of high school students, two high school princi *684 pals, and two high school athletic directors. Ind.Code § 20-26-14-6(a) (formerly § 20-5-

. A decision of the independent case review panel may be reversed by the trial court if the court determines that the panel's decision is:
(1) not a fair and logical interpretation or application of the association's rule;
(2) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(3) contrary to a constitutional right, power, privilege, or immunity;
(4) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(5) without observance of procedure required by law; or
(6) unsupported by substantial evidence.
Ind.Code § 20-26-14-7(c).